SOLIVELLAS & Co., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE AGUADILLA, recurrido.

No. 692.—*Sometido:* Noviembre 7, 1927.  *Resuelto:* Diciembre 16, 1927.

PRINCIPAL Y AGENTE—DERECHOS, DEBERES Y RESPONSABILIDADES MUTUAS—EJECUCIÓN DEL MANDATO—SUBSTITUCIÓN DEL PODER A FAVOR DE OTRO—SUSTITUCIÓN DEL SUSTITUTO.—En ausencia de facultad expresa en el poder para que el sustituto nombrado por el mandatario pueda sustituir a su vez el poder en favor de otro sustituto, o de un precepto estatutorio que lo autorice, tal sustitución no puede hacerse.

NOTA de *William J. Santos,* R. (Aguadilla), negando cancelación de hipoteca en cuanto a la participación que en el crédito correspondía a una de las mandatarias.  *Confirmada.*

*López de Tord & Zayas Pizarro,* abogados del recurrente, *El Registrador* recurrido compareció por escrito.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En el registro de la propiedad de Aguadilla se presentó la escritura de cancelación otorgada ante el notario Zayas Pizarro por Antonio Vicens como apoderado de la Sucesión

Trujillo Pizá el 20 de mayo de 1927, y el registrador la inscribió en cuanto a las participaciones que en el crédito cancelado correspondían a Dolores Costa, Juan Trujillo Torruella y José, Julio, Cándido y María Trujillo Costa, miembros de la indicada Sucesión, y la denegó en cuanto a la participación correspondiente al otro miembro de la Sucesión Isabel Trujillo Torruella

"por no aparecer de la escritura de poder . . . . . . que la poderdante dé facultades para que el sustituto nombrado por su mandatario pueda sustituir a su vez el poder en favor de otro sustituto."

De la escritura de poder acompañada a la de cancelación aparece que doña Isabel Trujillo Torruella otorgó poder general a su esposo Jaime Pizá, autorizándolo para "sustituir este poder en todo o en parte, revocar las sustituciones y hacer otras, sin limitación alguna."

En ejercicio de las facultades que le confirió su esposa, Pizá sustituyó el poder en todas sus partes a favor de Jaime Montaner y a su vez Jaime Montaner lo sustituyó a favor de Antonio Vicens a quien también nombraron su apoderado los demás miembros de la Sucesión Trujillo Pizá y quien como apoderado de todos otorgó, según se ha dicho, la escritura de cancelación de que se trata.

La cuestión a estudiar y a resolver es, pues, la siguiente: ¿Puede el sustituído en un poder sustituirse en otra persona, sin que haya sido expresamente autorizado para ello por el mandante?

En su alegato dice el recurrente que no ha podido encontrar precedentes exactos en la jurisprudencia de la Corte Suprema de España, ni en la de ésta de Puerto Rico. Tampoco cita el registrador caso alguno en que la cuestión envuelta haya sido decidida, ni lo hemos encontrado nosotros.

La primitiva idea de que el mandato se basaba únicamente en la amistad y la confianza, parecía contraria a la sustitución. Las relaciones humanas, los negocios entre los hombres se fueron extendiendo de tal modo que la sustitu-

ción se impuso y así el Código Civil español avanzando en el camino abierto por el Código de Napoleón estableció que el mandatario podría nombrar sustituto, a menos que se lo prohibiera el mandante. Art. 1721 del Código Civil Español y 1623 del Código Civil Revisado.

Basándose en ese movimiento progresivo impuesto por la necesidad y en una sentencia de la Corte Suprema de España, que aparece en el tomo XXI de la Enciclopedia Jurídica española, página 590, como dictada el 6 de diciembre de 1897, sostiene el recurrente que el apoderado sustituído por el sustituto queda colocado exactamente en las mismas condiciones en que lo estaba el primitivo apoderado y por tanto tiene la expresa facultad de sustituirse en otra persona.

La sentencia de la Corte Suprema de España invocada, resuelve que:

"Dada la naturaleza del mandato y los derechos y obligaciones que de él nacen, cuando un mandatario hace uso de las facultades de substitución que el poderdante le confiere, con o sin la designación de la persona del substituto, es evidente que, cumplido en esta parte el mandato, se desliga aquél de todas sus relaciones jurídicas con el mandante, salvo el caso previsto en el núm. 2º del art. 1,721 del Código Civil, quedando en su lugar el substituto, único que desde entonces tiene el carácter de mandatario con relación al poderdante, a diferencia del caso en que el primer mandatario por sí, y no en cumplimiento de un mandato, confiere a un tercero poder para que haga lo que él sigue obligado a hacer en sus relaciones con la persona que le confirió el mandato."

No hay duda alguna del principio establecido. Una vez que el apoderado nombrado directamente por el poderdante ejercita la facultad de sustitución que le fué expresamente conferida o la asume y ejercita de acuerdo con la ley, cesa en su cometido y queda desligado de toda ulterior relación con excepción de la que pueda surgir a virtud de las responsabilidades que la misma ley le impone. ¿Pero quiere esto decir que la persona por él nombrada como su sustituto pueda nombrar otra que lo sustituya y esta otra otra

a su vez y así indefinidamente, sin estar para ello autorizada expresamente por el mandante y sin que el caso esté previsto y resuelto expresamente por la ley?

La opinión del recurrente no está desprovista de lógica y es digna de considerarse y de tenerse en cuenta, pero la verdad es que si nosotros la aceptáramos y la convirtiéramos en jurisprudencia, penetraríamos en un campo de acción que no corresponde a la rama judicial sino a la legislalativa del gobierno.

La facultad de sustituir la tiene el mandatario primitivo tanto cuando actúa a virtud del poder conferídole expresamente por el mandante como cuando lo hace usando del que le concede la ley. Es a él, al elegido personalmente, al que se confiere la facultad. El primitivo apoderado puede escoger otra persona para cumplir el encargo que a él se le encomendara pero no puede, a menos que lo diga el poderdante o lo disponga la ley, trasmitir a esa otra persona la facultad de sustituirse a sí misma. De los mismos términos en que se otorgó la escritura del poder original en este caso se desprende que ésa es la verdadera interpretación legal. Se autorizó al apoderado para sustituir el poder en todo o en parte y *para revocar las sustituciones y hacer otras sin limitación alguna.*

Si examinamos la cuestión a la luz de la jurisprudencia americana llegaremos a la misma conclusión. La regla general en el continente, tal como la expone Cyc. es que:

"un agente en quien se deposita fe o confianza, o a quien se exige que ejercite su discreción o juicio, no puede confiar a otro sin el consentimento de su principal el cumplimiento de sus deberes; y como casi todos los actos de agencia envuelven discreción y la selección misma de un agente ordinariamente implica confianza personal en el agente escogido, se desprende que una persona investida con autoridad para actuar en beneficio de un principal debe ordinariamente realizar el acto por sí mismo." 31 Cyc. 1425.

Las excepciones a la regla se exponen en la misma obra así:

"Sub-agentes pueden claramente ser nombrados cuando su nombramiento ha sido expresamente autorizado por el principal, y en tal caso el agente no asume responsabilidad alguna por los actos del subagente, quien es directamente responsable al principal. El consentimiento del principal en hacer responsable al subagente se presumirá cuando a sabiendas consiente en la sustitución de otro en lugar del agente nombrado.

"No siempre es necesaria autorización expresa para nombrar subagentes. Tal autorización regularmente debe deducirse cuando la agencia obvia y naturalmente es tal que hace necesaria el empleo de subagentes. En tales casos el empleo de subagentes se presume que ha sido contemplado cuando se dió el poder, y el agente tiene autoridad implícita para nombrar tales subagentes dentro de los límites de las necesidades del caso. Por tanto no incurre en responsabilidad por los actos de tales subagentes si éstos son escogidos con cuidado razonable, y el principal queda obligado por lo actos de un subagente así nombrado aun cuando no tenga conocimiento personal de él. Lo contrario de la proposición es igualmente cierto, y un agente no tiene poder implícito para delegar su autoridad a un subagente cuando tal delegación no es necesaria, propia o usual." 31 Cyc. 1427, 1428.

El caso de autos por su naturaleza no cae dentro de las excepciones. Lo que se hizo aquí fué cancelar una deuda hipotecaria.

Hemos consultado la jurisprudencia de Louisiana, estado que tiene un código civil basado en el de Napoleón que también sirvió de base primitivamente al nuestro y no arroja mucha luz sobre la exacta cuestión en controversia. De acuerdo con ella bajo un poder general, el agente tiene el derecho de nombrar un sustituto. *Dubreuil* v. *Ronzan*, 1 Mart. (N.S.) 158, y el agente que sustituye a otro en su lugar con el consentimiento del principal no puede revivir su extinta autoridad y obligar al principal sin su consentimiento. Código civil arts. 2997, 2998, 2999.—*Saul* v. *Lalaurie*, 1 La. Ann. 401. De lo resuelto no puede inferirse que el que actúa por sustitución tenga a su vez la facultad de hacerse sustituir por otra persona.

Seguramente se trata aquí de una transacción correcta,

pero tal como consta realizada, de acuerdo con la ley estaba el registrador obligado a negarse a inscribirla. Puede ser fácilmente ratificada y la inscripción verificarse entonces sin dificultad.

*Debe confirmarse la nota recurrida en la parte en que lo fué.*